UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

ANZHELA PINKHASOV *a/k/a* ANGELA PINK,

        *Plaintiff*,

       -against-

                    **MEMORANDUM & ORDER**
                    1:23-CV-3460 (OEM) (SJB)

INNA VERNIKOV,

        *Defendant*.

-----------------------------------------------------------------x

**ORELIA E. MERCHANT, United States District Judge:**

        Anzhela Pinkhasov *a/k/a* Angela Pink ("Pinkhasov") alleges that defendant Inna Vernikov, a sitting New York City Councilmember ("Councilmember Vernikov"), violated her First Amendment rights when Councilmember Vernikov blocked Pinkhasov from commenting on and interacting with the Councilmember's Twitter page.[1]  Pinkhasov commenced this action seeking a declaration that Vernikov's "point-based blocking of Plaintiff from the @InnaVernikov Twitter account to be unconstitutional" as well as an injunction requiring Vernikov to "unblock" Pinkhasov and "prohibit [her] from blocking [Pinkhasov]" in the future "on the basis of viewpoint."   Amended Complaint ("Am. Compl."), ECF 6, at 11.  Vernikov declares that she has since unblocked Pinkhasov, that Pinkhasov now has full access to her Twitter page, and that Vernikov has "no intention" of blocking Pinkhasov in the future so long as Pinkhasov's "conduct does not violate the law."   Declaration of Inna Vernikov ("Vernikov Decl."), ECF 20, ¶¶ 8-10. Given this, Councilmember Vernikov moves pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the action, claiming it is moot under the voluntary cessation doctrine.

---

[1] Though Twitter has since been renamed "X," the Court refers to the platform as "Twitter," the name of the platform at the time this action was filed.

For the reasons that follow, Councilmember Vernikov's motion to dismiss the case as moot is **DENIED** and Pinkhasov's motion to amend her complaint to include a § 1983 claim is **GRANTED**.

## BACKGROUND[2]

### A.    Twitter's Mechanics

Twitter is an online, web-based social media platform that allows users—those persons who have signed up and created a Twitter account—to post size-limited messages, which can include photos, videos, links, and other media. *See* Am. Compl. ¶¶ 19-21. A Twitter user must have an account name, or "handle," which is an "@" symbol followed by a unique identifier. *Id.* ¶ 23-24.

By default, a user's Twitter account is publicly viewable not only to all users of the platform but also non-users who can visit the accountholder's Twitter page. *Id.* ¶¶ 20-21. Twitter users can interact with users' "Tweets", "like" a Tweet, comment or reply on a Tweet, mention other accounts in replies, and re-publish or "retweet" a user's Tweets to their own followers. *Id.* ¶¶ 21-22, 25-28. Twitter users also have the affirmative power to "block" other users from viewing or interacting with the content posted on their Twitter accounts. *Id.* ¶ 28. "A user who blocks another user prevents the blocked user from interacting with the first user's account on the Twitter platform." *Id.* "A blocked user cannot see or reply to the blocking user's tweets, view the blocking user's list of followers or followed accounts, or use the Twitter platform to search for the blocking user's tweets." *Id.* A blocked user is not affirmatively notified when she has been blocked. *Id.* ¶¶ 29-30. Rather, she generally only finds out about being blocked when she attempts to access

---

[2]  The following facts are taken from the Amended Complaint and the parties' various declarations submitted in connection with this motion. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

the blocked page and is met with the message: "You're Blocked." *Id.* ¶ 30.   Such was the case here.  *See id.*

## B.   Relevant Factual Background

Councilmember Vernikov is an elected member of the New York City Council for District 48.  *Id.* ¶ 5.  Since 2012, Councilmember Vernikov has "maintain[ed] an active Twitter account with the handle @InnaVernikov."  *Id.*  Councilmember Vernikov has over twenty thousand followers and "regularly posts" Tweets of both a public and political nature.  *See Id.* ¶¶ 31-33.  Topics of such Tweets include "public safety, public housing, [and] sanitation[.]"  *See id.* ¶ 33.  It is alleged that "these tweets involve a public interest and matters of official capacity."  *Id.*

Pinkhasov is, among other things, a "private citizen," "a journalist," and a "staunch advocate for local political and economic causes" such as "Equal Rights" and "government transparency."  *Id.* ¶¶ 2, 38.  Pinkhasov maintains an active Twitter account under the handle @Angela365305501.  *Id.* ¶ 17.  Pinkhasov has a history of engaging with Vernikov's account in in a way Pinkhasov herself describes as "critical."  *Id.* ¶¶ 35, 37; *see, e.g.*, Pinkhasov Decl. ¶¶ 6-7.

It is undisputed that on or about April 20, 2023, Vernikov "or a member of [her] staff" blocked Pinkhasov's Twitter account, *i.e.*, the @Angela365305501 handle, from accessing and interacting with Councilmember Vernikov's Twitter account, *i.e.*, the Twitter page associated with @InnaVernikov.  *See* Am. Compl. ¶ 35; Vernikov Decl. ¶¶ 4-5; Reply Br, ECF 26 at 2; Vernikov Reply Decl., ECF 27 ¶ 5.

Pinkhasov then commenced this action by filing a complaint on May 8, 2023, *see* ECF 1.  Pinkhasov subsequently filed an amended complaint on May 9, 2023, to fix a typographical error.  S*ee generally* Am. Compl.  Councilmember Vernikov declares that she became aware of the suit in "late May 2023."  Vernikov Decl. ¶ 6.  Councilmember Vernikov twice sought, with Plaintiff's

consent, extensions of time to respond to the complaint.  In the first request, filed on June 13, 2023, Corporation Counsel represented that it required additional time to, *inter alia*, "determine a litigation strategy."  Extension Request Letter dated June 13, 2024, ECF 11.  The Court granted the first extension, requiring a response by July 14, 2023.  On July 12, 2023, Councilmember Vernikov, through counsel, requested another extension, *see* ECF 14, citing the same reasons and adding that Councilmember Vernikov sought to "determine whether the parties can resolve this matter without further proceedings."  *Id.* at 1.  Councilmember Vernikov requested a response date of September 1, 2023.  *Id.*  The Court granted this request as well.  *See* Order dated July 13, 2023.  Throughout this period, Pinkhasov remained blocked from accessing Councilmember Vernikov's Twitter page.[3]  *See* Vernikov Decl. ¶ 8.

On August 30, 2023, two days before Councilmember Vernikov's response to the Amended Complaint was due, Councilmember Vernikov unblocked Pinkhasov's @Angela365305501 handle.  Vernikov Decl. ¶ 8; Vernikov Reply Decl. ¶ 5.  Councilmember Vernikov declares that "such unblocking restored [Pinkhasov's] ability to use all of [Twitter's] functionality to fully interact with the @InnaVernikov account."  Vernikov Decl. ¶ 8.

The next day, August 31, 2023, Councilmember Vernikov took the first procedural steps to dismiss the case and the Court subsequently set a briefing schedule for the motion to dismiss.  *See* Vernikov Pre-Motion Conference Letter dated August 31, 2023 ("PMC Letter"), ECF 17; Order dated September 1, 2023.  In her PMC Letter, Councilmember Vernikov contended the case was now moot under the voluntary cessation doctrine.  *Id.* at 2.

On November 29, 2023, Councilmember Vernikov filed her motion to dismiss with a supporting memorandum of law and declaration, maintaining that the action was moot under the

---

[3] Councilmember Vernikov declares that she never received any requests from Pinkhasov to be unblocked. Vernikov Decl. ¶ 7.

voluntary cessation doctrine. *See* Notice of Motion, ECF 19; Defendant's Memorandum of Law in Support of Motion to Dismiss the Amended Complaint ("Vernikov Memo"), ECF 21; Declaration of Inna Vernikov ("Vernikov Decl."), ECF 20. In addition to opposing Defendant's motion to dismiss, Pinkhasov also sought leave to file a second amended complaint to add a § 1983 claim. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint and in Support of Cross-Motion for Leave to file a Second Amended Complaint ("Pinkhasov Memo"), ECF 25; *see also* Proposed Second Amended Complaint, ECF 22; *See* Fed. R. Civ. P. 15(a)(2). Councilmember Vernikov filed a reply brief ("Vernikov Reply"), ECF 26, and a supplemental declaration ("Vernikov Reply Decl."), ECF 27.

## LEGAL STANDARD

### A.   Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

"Article III of the Constitution limits federal 'judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980) (quoting U.S. CONST., Art III). A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *See* Fed. R. Civ. P. 12(b)(1); *accord Wagschal v. Skoufis,* 442 F. Supp. 3d 612, 620 (S.D.N.Y. 2020), *aff'd*, 857 F. App'x 18 (2d Cir. 2021) (summary order); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (setting out the "the irreducible constitutional minimum" required to invoke a federal court's jurisdiction).

Generally, a plaintiff bears the burden of proving by a preponderance of the evidence that a live case or controversy exists. *See Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir. 1996). However, a "case that becomes moot at any point during the proceedings is 'no longer a "Case" or "Controversy" for purposes of Article III, and is outside the jurisdiction of the federal courts.'"

*United States v. Sanchez-Gomez*, 584 U.S. 381, 385–86 (2018) (quoting *Already LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

**B.    Mootness**

While Article III of the Constitution makes no mention of the word "mootness," the Supreme Court has developed certain "prudential" doctrines to ensure that the federal judicial power is only limited to and exercised over actual "Cases" and "Controversies." *Lujan*, 504 U.S. at 559-60 (quoting U.S. Const., Art. III § 2); *accord Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 71 (2013). Namely, these are the doctrine of standing, and its "corollary," the doctrine of mootness. *See Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 8 (2023) (Thomas, J. concurring in judgment) ("Standing and mootness are both jurisdictional doctrines that flow from Article III."); *Genesis Healthcare Corp*, 569 U.S. at 71-72. Both doctrines are "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)) (quotation marks omitted). That is, the doctrines of standing and mootness help ensure that federal courts are not used as tribunals to provide advisory opinions on hypothetical questions or as remedial bodies to address generalized grievances. *See Warth*, 422 U.S. at 498–499 ("Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party."); *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("It has long been settled that a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." (internal quotation marks omitted)).

As it concerns mootness, the Supreme Court has interpreted Article III's "Case" and "Controversy" "requirement to demand that an actual controversy be extant at all stages of review,

not merely at the time the complaint is filed." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016), *as revised* (Feb. 9, 2016). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already*, 568 U.S. at 91 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)) (some internal quotation marks omitted); *Summers*, 555 U.S. at 493. When a case becomes moot, a court is "compelled simply to dismiss, leaving the dispute unadjudicated." *See ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 94 (2d Cir. 2007).

When applying mootness principles at the motion to dismiss stage, the Court takes the plaintiff's uncontested factual allegations as true as well as the uncontested factual allegations contained in the declarations provided by both parties in the case. *See Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 236 (2024) (accepting "as true the supplemental evidence the government offered," which included declarations from government officials).

## DISCUSSION

"Mootness can arise in many ways during the course of litigation." *ABN Amro Verzekeringen BV*, 485 F.3d at 94. However, "[t]he mootness doctrine is riddled with exceptions." *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994). Here, Councilmember Vernikov argues that this case is moot pursuant to the voluntary cessation doctrine. *See* Vernikov Br. At 2; Reply at 3-5.

### A.    Voluntary Cessation Doctrine

"It is well settled that the voluntary cessation of allegedly unlawful conduct does not moot a case in which the legality of that conduct is challenged." *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 724 n.3 (2010) (citing *City*

of *Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)) (Alito, J. dissenting).  That is, "a defendant cannot automatically moot a case simply by ending its [allegedly] unlawful conduct once sued."  *Already*, 568 U.S. at 91 (citing *City of Mesquite*, 455 U.S. at 289); *see DeFunis v. Odegaard*, 416 U.S. 312, 318 (1974) ("There is a line of decisions in this Court standing for the proposition that the 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot.'") (collecting cases); *Holland v. Goord*, 758 F.3d 215, 223 (2d Cir. 2014) (same).

The rationale for this exception to mootness is simple: "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends."  *Already*, 568 U.S. at 91; *accord Fikre*, 601 U.S. at 241.  "At bottom, the 'rule traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior.'"  *Mhany Mgmt., Inc.*, 819 F.3d 603 (2d Cir. 2016) (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n. 1 (2001)); *see United States v. Trans-Missouri Freight Ass'n*, 166 U.S. 290, 309 (1897).

Given this concern, the Supreme Court has "explained that 'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Already*, 568 U.S. at 91 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190, 120 (2000)); *accord Mhany Mgmt., Inc.*, 819 F.3d at 603; *Salem v. Pompeo*, 432 F. Supp. 3d 222, 233 (E.D.N.Y. 2020).  Under the voluntary cessation test that has evolved out of the Supreme Court's decision in *U.S. v. W.T. Grant Co.*, "[t]o show that a case is truly moot, a defendant must prove 'no reasonable expectation' remains that it will 'return to [its] old ways.'"

*Fikre,* 601 U.S. at 241 (quoting *id.*, 345 U. S. 629, 632–633 (1953)) (alteration in original).  This test "is a stringent one," *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968), and the defendant's burden is "a heavy one."  *W.T. Grant Co.*, 345 U. S. at 633.[4]

## B.    Defendant Has Not Carried Her "Formidable Burden"

On the present record, the Court is unpersuaded that Councilmember Vernikov has carried her "formidable burden" to show the Court that Pinkhasov's blocking "cannot reasonably be expected to recur." *Fikre*, 601 U.S. at 241 (cleaned up).  That showing must be "absolutely clear." *Already*, 568 U.S. at 91.   The sum total of evidence of assurance before the Court is Councilmember Vernikov's sworn statements providing in relevant part that: (1) "I or a member of my staff blocked Plaintiff's X account under the handle @Angela36530550l from interacting with my [Twitter] account"; (2) "I blocked Plaintiff's @Ange1a365305501 handle because she has engaged in persistent verbally abusive behavior towards myself and several of my staff members"; and, (3) "I have no intention of using the banning function on [Twitter] to block Plaintiff from interacting with my [Twitter] account in the future, presuming [Pinkhasov's] conduct does not violate the law."  Vernikov Decl. ¶¶ 4-5, 10; *accord* Vernikov Reply Decl. ¶ 5. For the reasons that follow, neither the declaration nor other circumstances provide "assurance that there is no reasonable expectation that the alleged violation will recur[.]"  *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979) (quoting *W.T. Grant. Co.*, 345 U.S. at 633) (alteration and internal quotation marks omitted).

---

[4] A defendant must additionally demonstrate "that interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'"  *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016) (quoting *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).  While there is a dispute between the parties as to whether Pinkhasov was "fully" unblocked and/or some of her comments were deleted, *see* Pinkhasov Decl. ¶¶ 6-7, Vernikov Reply Decl. ¶¶ 6-7, the Court need not address this prong because it finds in any case that Councilmember Vernikov has not carried her formidable burden of showing that the conduct will not recur.  *See generally* Part B. *infra.*

1. **The Supreme Court's Ruling in *Fikre* Forecloses Mootness Based on Councilmember Vernikov's Declarations**

The Supreme Court's recent decision in *Fikre* cements the proposition that a defendant's "sparse declaration," 601 U.S. at 242, containing only contingent promises cannot, without more in the way of assurance, carry the "heavy burden of persua[ding]" the court that the challenged conduct "cannot reasonably be expected to start up again . . . ." *Friends of the Earth, Inc.*, 528 U.S. at 189; *see Fikre*, 601 U.S. at 242 (citing same); *W.T. Grant Co.*, 345 U.S. at 633 (defendants' representation that they had removed unlawful conditions and disclaimer of any intention to revive them deemed insufficient as "such a profession does not suffice to make a case moot" in itself); *Concentrated Phosphate*, 393 U.S. at 203 (export association's own statement that new regulation made it "uneconomical for the association to continue in operation" could not, "standing alone, suffice to satisfy the heavy burden of persuasion . . . ." (citation omitted)); *R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 106 (2d Cir. 1989) ("[D]isclaimer of intention to revive allegedly unlawful conduct does not suffice by itself to meet defendants' heavy burden in order to render the case moot."); *Farez-Espinoza v. Napolitano*, No. 08 CIV. 11060 (HB), 2009 WL 1118098, at *4 (S.D.N.Y. Apr. 27, 2009) ("A general disclaimer of intent to revive the allegedly unlawful conduct is insufficient in itself to overcome the defendant's heavy burden."); *Upjohn Co. v. American Home Products Corp.*, 598 F. Supp. 550, 555 (S.D.N.Y. 1984) (narrowly drawn affidavits claiming abandonment of allegedly wrongful conduct are insufficient to meet defendant's heavy burden).

In *Fikre*, the respondent, Yonas Fikre, challenged his allegedly unlawful placement on the federal government's No Fly List, seeking declaratory and injunctive relief and alleging, *inter alia,*

violations of due process for his placement on the No Fly List.[5]  *See* 601 U.S. at 236-39. Specifically, Fikre contended both his placement on the No Fly List without notice and without an available process to try and remove himself from it were constitutionally impermissible.  *Id.*

Fikre lost at the district court on mootness grounds after the government informed him that he had been removed from the No Fly List, but on appeal, he secured a reversal before the Ninth Circuit, which refused to take the "mere announcement" of removal as sufficient under the voluntary cessation doctrine.  *Id.* at 240-41. (quoting *Fikre v. Fed. Bureau of Investigation,* 904 F.3d 1033, 1039 (9th Cir. 2018)).  Seeking to shore up its argument for mootness, the government proffered a declaration from a government official from the Terrorist Screening Center, Christopher R. Courtwright, who "represented that Mr. Fikre 'will not be placed on the No Fly List in the future based on the currently available information.'"  *Id.* (quoting the "Courtwright Declaration").  After another dismissal on mootness and subsequent reversal by the Ninth Circuit, the case reached the Supreme Court on appeal.  *Id.*

Justice Gorsuch, writing for a unanimous Supreme Court, affirmed the Ninth Circuit's reversal.  The Supreme Court reiterated the "formidable burden" a defendant—even a government defendant—must surmount to demonstrate mootness predicated on voluntary cessation.  *Id.* at 242. The Supreme Court explained that because a defendant's true voluntary cessation moots a court's power to adjudicate an action, a court must look to what a defendant can substantively offer in terms of a binding glue to keep its promise that it will not act unlawfully after that adjudication. *See id.* at 242-44 ("The Constitution deals with substance, not strategies") (quotation marks and citation omitted).  On the uncontested facts as they arose in *Fikre*, the Court found that the case

---

[5] The No Fly List prohibits listed individuals "from flying into, out of, within, or over the United States."  *Id.* at 1.  "In the aftermath of the September 11, 2001, terrorist attacks, the federal government rapidly expanded its No Fly List" such that "[b]y 2016, the government forbade approximately 81,000 individuals from flying into, out of, within, or over the United States."  *Id.*

was "not moot" under the voluntary cessation doctrine because, "[p]ut simply, the government's sparse declaration falls short of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past." *Id.* at 242 (citing *Friends of the Earth*, 528 U. S. at 190).

In coming to this conclusion, the Supreme Court first rejected the government's argument that because litigation had been ongoing since he had been de-listed in 2016 and Fikre had "presumably" been re-associating with "his co-religionists" and the government had not yet relisted him, Fikre was "unlikely" to be relisted in the future. *Id.* The Court explained:

> That, too, is insufficient to warrant dismissal. A case does not automatically become moot when a defendant suspends its challenged conduct and then carries on litigating for some specified period. Nor can a defendant's speculation about a plaintiff's actions make up for a lack of assurance about its own.

*Id.* at 243 (citing *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U. S. 701, 719 (2007) (declining to dismiss a case as moot five years after the defendant voluntarily ceased its challenged conduct)).

The Supreme Court also opined as to whether and to what extent a defendant's "repudiation" – that is rejection or renouncement – of its past conduct may provide evidence support for its claim of mootness. On appeal, the FBI contended that the Ninth Circuit's test required the FBI "to admit it lacked any lawful basis" to put Fikre on the No Fly List *ab initio* in order to satisfy mootness; Fikre disputed this interpretation. The Supreme Court answered that:

> Yes, a party's repudiation of its past conduct *may* sometimes help demonstrate that conduct is unlikely to recur. But often a case will become moot even when a defendant "vehemently" insists on the propriety of "the conduct that precipitated the lawsuit." What matters is not whether a defendant repudiates its past actions, *but what repudiation can prove about its future conduct.* It is on that consideration alone—the potential for a defendant's future conduct—that we rest our judgment.

*Id.* at 244 (quoting *Cty. of Los Angeles,* 440 U.S. at 632-33) (emphasis added).

Applying these principles to the instant case, it is plain that this case is not moot under the voluntary cessation doctrine despite Councilmember Vernikov's assertions to the contrary.[6]

First, Councilmember Vernikov's declarations fail to provide sufficient evidence demonstrating that Pinkhasov will not face re-blocking in the future. The total quantum of assurance that Councilmember Vernikov provides to the Court as to whether she would block Pinkhasov on social media again in the future—which is the only consideration for the Court here as *Fikre* makes clear—is the representation that she has "no intention of using the banning function on [Twitter] to block Plaintiff from interacting with [her Twitter] account in the future, presuming [Pinkhasov's] conduct does not violate the law." Vernikov Decl. ¶ 10. This representation, like one in the Courtwright declaration in *Fikre*—representing that the respondent "will not be placed on the No Fly List in the future based on the currently available information[]"—is insufficient for the same reasons. *Fikre*, 601 U.S. at 242. Namely, it does not "speak to" whether Councilmember Vernikov might re-block Pinkhasov "if [s]he does the same or similar things in the future." *Id.* Rather, this declaration makes Pinkhasov subject to Councilmember Vernikov's (or her staff's) opaque determination that somewhere, at some time, Pinkhasov has done something, *i.e.*, engaged in "conduct," they deem illegal. Vernikov Decl. ¶ 5. Dialing in to what "similar things" means in this context, it is unclear what internet or speech-related conduct by Pinkhasov might trigger re-blocking in the future. *Fikre*, 601 U.S. at 242. Councilmember Vernikov's declaration includes no examples of what she considers "abusive speech," what she considers unlawful, whether she considers Pinkhasov's "abusive speech" synonymous with unlawful conduct, and any metrics, procedure, and qualifications she has to which make such a determination. Like Yonas Fikre who did not know whether it was attendance at a mosque, his refusal to turn into an informant, or

---

[6] Like in *Fikre*, the instant motion arises in the motion to dismiss posture under Rule 12(b)(1) and thus all uncontested factual allegations are taken as true. *See id.* at 2 n.1.

something else that placed him on the No Fly List, Councilmember Vernikov's short declaration, "falls short of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past," because it does not actually "speak to" what would trigger re-blocking and only provides assurances which are couched in legal conclusions.

Moreover, any assurance given by Councilmember Vernikov may ultimately be illusory as her declaration does not actually state who controls the @InnaVernikov Twitter account or is responsible for social media management and blocking.  Indeed, her declarations state that the blocking of Pinkhasov was done by her "or a member of her staff."  Vernikov Decl. ¶ 4.  So, while Councilmember Vernikov represents *she* has no intention of blocking Pinkhasov in the future, she provides no such assurance or indication that her declaration binds anyone else on her staff, who has the power to block Pinkhasov (or any other constituent) for whatever reason, intentionally or not, at the direction of Councilmember Vernikov or by their own whim and accord.

Further, the instances where the Supreme Court and other lower courts have found the voluntary cessation test met, the defendants' assurances are generally more detailed and binding than here.  *See Already*, 568 U.S. at 93-95. (a judicially enforceable, "unconditional[,] and irrevocable" covenant mooted case under voluntary cessation doctrine because "[b]eyond simply prohibiting Nike from filing suit, it prohibits Nike from making any claim *or* any demand"); *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 397 (2d Cir. 2022) (case mooted in part by "parties' mutual agreement and stipulation to the process for the return or destruction of documents produced by Exxon prior to trial"); *Saint-Amour v. Richmond Org., Inc.*, No. 16-CV-4464 (PKC), 2020 WL 978269, at *3 (S.D.N.Y. Feb. 28, 2020) ("Having reviewed the covenant not to sue, the Court concludes that it is extremely broad, covers past, present and future conduct by plaintiffs, their predecessors, successors, assigns and a host of others. Defendants have met their burden of

showing that they could not reasonably be expected to resume their efforts to enforce against plaintiffs any right they may have under the copyright laws relating to the Song."); *Cf. Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 n.1 (2017) (agreeing that case was not moot and defendants had not carried their "heavy burden" where "there is no clearly effective barrier that would prevent the" the conduct in the future).

Second, a defendant's "substantial compliance with" remediating allegedly illegal conduct "might moot the case, but—we once more reiterate—only if one or the other of these events made it absolutely clear that" the defendant's alleged "violations could not reasonably be expected to recur." *Friends of the Earth, Inc*, 528 U.S. at 19. Here, assuming fact that Councilmember Vernikov has not re-blocked Pinkhasov, nor otherwise interfered with her ability to interact with the @InnaVernikov account since August of 2023, despite her posting critical comments, *see* Ex. 1 to Vernikov Reply Decl., this does not change the outcome because a "case does not automatically become moot when a defendant suspends its challenged conduct and then carries on litigating for some specified period." *Fikre*, 601 U.S. at 243.

Third, Councilmember Vernikov does not repudiate or otherwise renounce her blocking of Pinkhasov. While repudiation is not strictly required, it's absence means Councilmember Vernikov cannot benefit from it here in the mootness analysis. *See Fikre,* 601 U.S. at. 244 (explaining that "repudiation" is only valuable as to what it "can prove about [a defendant's] future conduct").

For these reasons, the Court finds Councilmember Vernikov has not carried her "formidable burden" to show that her conduct cannot "reasonably be expected to recur" based on her declaration. *Fikre*, 601 U.S. at 241. Councilmember Vernikov has "provide[d] no assurances, other than" her declaration, "that the same [allegedly illegal] behavior has not and will not

continue." *Comer v. Cisneros*, 37 F.3d 775, 800 (2d Cir. 1994). On this evidence, Councilmember Vernikov would be entirely free to return to block Pinkhasov upon dismissal of this case, then unblock Pinkhasov should suit be filed against her again. *See City of Mesquite*, 455 U.S. at 289. This is the exact pernicious cycle that the Supreme Court has sought to avoid by placing a "formidable burden" on defendants seeking refuge from litigation and potential adverse consequences by claiming voluntary cessation of their putatively illegal actions. *See Already*, 568 U.S. at 91. Councilmember Vernikov's "sparse declaration," containing only a contingent intention to refrain from blocking Pinkhasov pursuant to her own self-policing view of the legality of Pinkhasov's speech and/or conduct is insufficient to moot this case at present. *See Fikre*, slip op. at 7.

### 2. *Wagschal* Does Not Change the Outcome

At various points in her brief, Councilmember Vernikov relies on *Wagschal v. Skoufis* to contend the case is not moot. *See id.*, 442 F. Supp. 3d 612, 614 (S.D.N.Y. 2020) (McMahon, C.J.), *aff'd*, 857 F. App'x 18 (2d Cir. 2021) (summary order); Vernikov Memo at 3-5. While *Wagshal* shares some factual similarity to the instant matter, it is entirely distinguishable. In 2018, plaintiff Wagschal posted some unsavory "accusations" on a state senator's Facebook page. *Id.*, 857 F. App'x at 20. After the senator blocked Wagschal's commenting access to the senator's Facebook page, Wagschal sued, like Pinkhasov, for declaratory, injunctive, and monetary relief. *Id.* The senator unblocked Wagschal and subsequently submitted declarations in connection with a motion to dismiss pursuant to the voluntary cessation doctrine representing that he did "not intend to ban or block plaintiff's access to [the Senator's Facebook] page again at any time in the future." *Id.*, 442 F. Supp. 3d at 621. By summary order, the Second Circuit affirmed the district court's

conclusion that the claims for declaratory and injunctive relief were moot. *See generally* 857 F. App'x 18.

In concluding the case was moot the district court primarily relied on the Second Circuit's decision in *Dean v. Blumenthal*, 577 F.3d 60 (2d Cir. 2009). *Wagschal*, 442 F. Supp. 3d at 621. Taking a "totality of the circumstances" approach, the district court was persuaded by (1) the senator's declaration, explaining that a government defendant's representations were "entitled to some deference," along with (2) the fact that senator unblocked Wagschal "long before filing" his motion to dismiss, and (3) binding precedent at the time that made it illegal for state actors to block social media accounts. *Id.* (quoting *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992); citing *Knight First Amendment Inst. At Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019)). The Second Circuit's summary order agreed with the district court on the reasonable likelihood of recurrence prong also by relying on *Dean* and crediting the senator's declarations. *See Id.*, 857 F. App'x at 20. None of the considerations relied on by either *Wagschal* court are present here either factually or legally.

First and most obviously, the *Wagschal* district court, ruling in 2020, did not have the benefit of *Fikre* to guide its mootness analysis. Rather, it noted that a declaration "standing alone, might not be enough to moot [the] case" but relied on *Dean* to credit the senator's declarations with deference as well as considering the other circumstances of the case. *See Wagschal*, 442 F. Supp. 3d at 621. However, as discussed below, both government and private defendants are to be measured to the same burden and a government official's statements carry no more weight than a private one in determining assurances of future conduct. *See* Part B.3, *infra*. Second, unlike Councilmember Vernikov, the senator quickly unblocked Wagschal "long before" engaging in dispositive motion practice. As outlined below, Councilmember Vernikov's unblocking of

Pinkhasov here conspicuously tracks litigation and other external events.  *See* Part B.4, *infra.* Lastly, *Wagschal* reasoned the senator was unlikely to block the plaintiff again because, at that point in time, the Second Circuit had ruled that such blocking by a state actor constituted unconstitutional viewpoint discrimination.  *See Knight*, 928 F.3d at 237-39.  Thus, the court reasoned that a defendant cannot "reasonably be expected to resume conduct that it acknowledges is contrary to binding precedent." *Wagschal*, 442 F. Supp. 3d at 622.  But *Knight*'s precedential value has since been gutted by a *Munsingwear* vacatur.  *See* Part B.5 at note 14, *infra*.  And so, that same reasoning that a government official would not likely knowingly break the law again is inapplicable here where it is an open question as to whether such blocking is illegal in the first place.  *See Lindke v. Freed*, 601 U.S. 187 (2024) ("Because blocking operated on a page-wide basis, a court would have to consider whether Freed had engaged in state action with respect to any post on which Lindke wished to comment.").  Moreover, *Wagschal* arose in a different district and Second Circuit rulings by summary order have no precedential effect to bind this Court.

### 3.  Vernikov's Status as a Member of Government Does Not Change the Outcome.

The Court turns to an argument raised by Councilmember Vernikov contending that her status as a sitting member of the New York City Council provides additional evidentiary weight to her representations that she does not intend to not block Pinkhasov in the future.  *See* Vernikov Brief at 3  ("Further, when the defendant is a government official, the official's representations that the allegedly wrongful behavior has ceased are entitled to deference." (citing *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992))).

It is true that prior to *Fikre* a string of Second Circuit precedent emanating from *Harrison* opined that "[s]ome deference must be accorded to a state's representations that certain conduct has been discontinued" when analyzing mootness.  981 F.2d at 59 (citing *DeFunis*,  416 U.S. at 317); *see Mhany Mgmt., Inc.*, 819 F.3d at 604 (opining, however, that "some deference" in

mootness analysis "does not equal unquestioned acceptance").  However, in *Fikre* the Supreme Court made explicit what was once implicit in its precedent: "To show that a case is truly moot, a defendant must prove no reasonable expectation remains that it will return to its old ways. *That much holds for governmental defendants no less than for private ones.*"  601 U.S. at 241 (emphasis added) (citing, as examples, *West Virginia v. EPA*, 597 U. S. 697, 719 (2022); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U. S. 449, 457, n. 1 (2017); *Parents Involved*, 551 U. S. at 719–720).  Thus, to the extent *Harrison*'s prescriptions were valuable originally, the Supreme Court has now clarified that, in the context of determining voluntary cessation, declarations from government officials such as Vernikov are given no more special solicitude or evidentiary weight than those of private parties and the burden remains equally heavy for all defendants.  *See id.*  It is the substance of what can be learned about a defendants' future conduct that matters rather than the status of the speaker.  Again, Councilmember Vernikov's declaration remains insufficient irrespective of the fact that she is currently an elected representative.

### 4.  Suspicious Timing and Circumstances Cut Against A Finding of Mootness

Determining whether the issues presented in a case are moot is a discretionary act which requires a court to engage in a fact intensive inquiry.  *See Samele v. Zucker*, 324 F. Supp. 3d 313, 328 (E.D.N.Y. 2018) (the mootness inquiry is "intensely factual"); *Harrison*, 981 F.2d at 59 (examining whether the lower court, "in the exercise of its discretion," properly "dismiss[ed] the case as moot" (citing *City of Mesquite*, 455 U.S. at 289, *W.T. Grant Co.*, 345 U.S. at 632-33)).

It is no surprise, then, that when reviewing the facts giving rise to mootness under the voluntary cessation doctrine, both the Supreme Court and the Second Circuit look skeptically when a defendant's conduct or litigation practice appears manipulated or planned as an "attempt to evade federal court jurisdiction."  *Harrison*, 981 F.2d at 59.  "A live case or controversy cannot be so easily disguised, and a federal court's constitutional authority cannot be so readily manipulated."

*Fikre*, 601 U.S. at 241; *see City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000) (finding the court's "interest in preventing litigants from attempting to manipulate the Court's jurisdiction to insulate a favorable decision from review further counsels against a finding of mootness"); *City News & Novelty, Inc.*, 531 U.S. at 279 (finding that dismissing the case as moot will not "reward an arguable manipulation of the Court's jurisdiction"); *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 9 (2023) (Thomas, J., concurring) ("What is more, the circumstances strongly suggest strategic behavior on Laufer's part.") (dismissing ADA website tester's case as moot on other grounds).

The Second Circuit has also taken consideration of a defendant's potential "motives of self-interest," and "strategic" conduct or litigation as "highly influential factors" when assessing claims of voluntary cessation. *See Murphy v. Benson*, 270 F.2d 419, 421 (2d Cir. 1959) (explaining that "motives of self-interest, were highly influential factors in the formation of the Court's conclusion that the illegal conduct in *W. T. Grant*" (cleaned up)); *accord E.I. Dupont de Nemours & Co. v. Invista B.V.*, 473 F.3d 44, 47 (2d Cir. 2006) (The doctrine of voluntary cessation "aims to eliminate the incentive for a defendant to strategically alter its conduct in order to prevent or undo a Ruling adverse to its interest."); *accord Exxon Mobil Corp.*, 28 F.4th at 395; *U.S. v. N.Y.C. Transit Auth.*, 97 F.3d 672, 676 (2d Cir. 1996) ("We also think it is significant that the change of policy was instituted on the eve of the lawsuit. The Transit Authority emphasizes that the change had been under consideration long before the federal lawsuit, but that of course cuts two ways."); *Ahrens v. Bowen*, 852 F.2d 49, 53 (2d Cir. 1988) (affirming district court finding that announcement of change "on the eve of plaintiffs' motion for summary judgment" suggested that it was merely "an attempt … to conjure up an argument for mootness and thwart adjudication of the issue").

While timing and circumstances of the voluntary cessation cannot drive the conclusion of mootness alone, lower courts should not remain blind to "suspicious timing and circumstances"

that coincide with the cure of the alleged violation.  *See Mhany Mgmt., Inc.*, 819 F.3d at 604 (finding "[s]uspicious timing and circumstances pervade[d] the County's decision … [T]he County announced its decision to [cure the violation] only on the eve of summary judgment motions"); *see Logerfo v. Cnty. of Nassau, New York*, No. 17-CV-0010(JMA)(AYS), 2021 WL 12101046, at \*3 (E.D.N.Y. Mar. 11, 2021) (citing *Mhany* and collecting cases "in which courts have found that suspicious timing weighed against mootness"); *Nat. Res. Def. Council v. U.S. Dep't of Energy*, 362 F. Supp. 3d 126, 138 (S.D.N.Y. 2019).[7]  This is exactly what happened here: on August 30, 2023 Councilmember Vernikov unblocked Pinkhasov; the next day, August 31, 2023 Councilmember filed her first substantive response to the complaint contending the case was moot as she had voluntarily ceased blocking her.  *See* PMC Letter.  Thus the decision to unblock Pinkhasov "appear[s] to track the development of this litigation."  *Mhany Mgmt., Inc.*, 819 F.3d at 604; *accord Salem*, 432 F. Supp. 3d at 234.

Further, when viewed in context of external events, namely the City Council election cycle ongoing at the time, the cure of the allegedly illegal conduct also reads as a strategic move deprive this Court of the jurisdiction it would otherwise have to reach the merits and have the "legality of the [alleged] practices settled[.]"  *W.T. Grant,* 345 U.S. at 632; s*ee Mhany Mgmt., Inc.*, 819 F.3d at 604.  In May 2023, Councilmember Vernikov was running for reelection for City Council District 48 ("CD 48") in Staten Island.  *See* Reply Decl. ¶ 2.  Pinkhasov claims that her blocking occurred during "defendant's campaign season when defendant was garnering votes[.]"  Opp. at 2, 8.  Taking into consideration that Pinkhasov's was posting "critical" tweets in the lead up to Councilmember Vernikov's City Council reelection when she was blocked and was only

---

[7] This pervasiveness of "strategic mooting" conduct has even garnered academic scrutiny.  *See* Joseph C. Davis & Nicholas R. Reaves, *The Point Isn't Moot: How Lower Courts Have Blessed Government Abuse of the Voluntary-Cessation Doctrine*, 123 YALE L.J. FORUM 325, 329-32 (Nov. 26, 2019), https://perma.cc/29TG-QX9Z (describing instances of strategic mooting both in New York City and in *pro se* prisoner litigation).

unblocked after the resolution of the Republican primary adds to the "suspicious timing and circumstances." *Mhany Mgmt., Inc.*, 819 F.3d at 604.

Additionally, the Court observes that the primary election for CD 48 was held June 27, 2023.[8]  Councilmember Vernikov's answer was originally due June 26.  ECF 8.  However, she sought and was granted an extension until July 14, after the primary election.  Throughout that time Pinkhasov remained blocked from accessing or posting any Tweet's to the @InnaVernikov account.  Pinkhasov further declares that she was additionally blocked by Councilmember Vernikov on all other social media channels.  Pinkhasov Reply Decl. ¶ 8.  And while Pinkhasov was unblocked on Twitter in August, she remained blocked on those other social media channels until November 15, 2023, which coincided with date Pinkhasov was due to file her opposition briefing as well as eight days after the conclusion of the general election in which Councilmember Vernikov was reelected to CD 48. *See* Vernikov Reply Decl. ¶ 2 (reelected on November 7, 2023).

Taken together, Councilmember Vernikov's blocking of Pinkhasov's critical comments on her Twitter account at a politically sensitive time along with her unblocking in lockstep with the litigation schedule raises "simply too many questions" for the Court. *See Mhany*, 819 F.3d at 605.  Given that Councilmember Vernikov's declaration does not provide sufficient assurances, these additional considerations also weigh against a finding of mootness because her conduct raises the inference that the unblocking was strategically timed in order to "prevent" a ruling potentially "adverse to [her] interest." *E.I. Dupont de Nemours & Co.*, 473 F.3d at 47.

---

[8]  *See* N.Y. Board of Elections, Primary Election 2023, https://perma.cc/66QH-L4LF; Fed. R. Evid. 201.

**5.   The Public Interest in Settling the Legality of the Practice Militates Against Mootness**

The Supreme Court has opined that where voluntary cessation is claimed, "a public interest in having the legality of the practices settled, militates against a mootness conclusion." *W. T. Grant Co.*, 345 U.S. at 632; *accord DeFunis*, 416 U.S. at 318.   The First Amendment issues implicated by a governmental official's blocking of their constituents is not new and Pinkhasov's case is not the first such case first filed in this district. *See, e.g.*, *Dov Hikind v. Alexandria Ocasio-Cortez*, 1:19-cv-03956 (FB) (E.D.N.Y. July 9, 2019) (First Amendment Twitter blocking suit brought against Representative Alexandria Ocasio-Cortez, later dismissed by stipulation).[9]

Recently, the Supreme Court has finally provided lower courts with some necessary guidance when dealing with First Amendment-based § 1983 claims involving government officials blocking and deleting comments on social media. *See generally Lindke v. Freed*, 601 U.S. 187 (2024).   Under *Lindke*, to determine whether a government official was acting as a state actor at the time of the alleged First Amendment violation: a plaintiff is required "to show that the defendants "(1) had actual authority to speak on behalf of the  State on a particular matter, and (2) purported to exercise that authority in the relevant post." *See id.* at 198.   The Supreme Court also opined that because social media blocking "operate[s] on a page-wide basis, a court would have to consider whether [the defendants] had engaged in state action with respect to any post on which

---

[9] Indeed, the Second Circuit has previously tackled this exact issue. *See Knight First Amend. Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 232 (2d Cir. 2019) (subsequent history omitted).   In *Knight*, the Second Circuit squarely addressed the question in the context of then-President Trump's "utilizing Twitter's "blocking" function to limit certain users' access to his social media account, which is otherwise open to the public at large, because he disagrees with their speech." *Id.* at 230.   The Circuit affirmed the lower court's judgment that President Trump had "engaged in unconstitutional viewpoint discrimination" by blocking these users. *Id.*   In so doing, Judge Parker's decision thoroughly addressed the issues of whether the President was a government actor with respect to his use of his Twitter account (yes), whether the President's Twitter account was a public forum (yes), and whether the President had engaged in prohibited viewpoint discrimination when blocking constituents who criticized him or his policies (also, yes). *Id.* at 235-40.   However, the subsequent procedural life of *Knight*, resulting in a *Munsingwear* vacatur, ultimately erased the Circuit's holding as binding precedent but did not disturb its reasoning or ability to persuade.

[the plaintiff] wished to comment." *Id.* at 204.  These legal developments frame the public interest in settling the legality of the blocking practice.

## C.   **Plaintiff is Granted Leave to Amend Complaint**

Pinkhasov also seeks leave to amend her complaint in main part to add a damages claim under § 1983.  *See* Pinkhasov Memo at 9; Proposed Second Amended Complaint, ECF 25-2 ¶¶ 50-53.  Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  "This permissive standard is consistent with our strong preference for resolving disputes on the merits." *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 60 (E.D.N.Y. 2015) (quoting *Williams v. Citigroup, Inc.,* 659 F.3d 208, 212–13 (2d Cir. 2011)) (internal quotation marks omitted).  "[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Id.* at 61 (quoting *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 126 (2d Cir. 2008)).

Councilmember Vernikov's fails to establish that any of these considerations are at play here.  Rather, her primary objection to allowing Pinkhasov to amend her complaint is that there was "no reason" that a § 1983 claim could not have been filed sooner and that this amendment is an attempt to "manufacture a controversy." *See* Reply at 5, *id.* at n.1.  A clearly explained above, the issue before the Court is not moot and therefore granting Pinkhasov leave to add a § 1983 claim, *i.e.*, a different theory of recovery, based on the exact same facts would not prejudice Councilmember Vernikov.  Indeed, Councilmember Vernikov has had notice of the relevant facts since this lawsuit started. *See  Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 199 (S.D.N.Y. 2014) (Where the "proposed new claims rely on essentially the same facts as were set out in the

original complaint, forcing plaintiffs to institute a new action against the defendant would run counter to the interests of judicial economy." (cleaned up)).  It is also in the judicial interest of resolving the issues on the merits and in a streamlined fashion

To the extent Councilmember Vernikov's objection sounds in undue delay, "mere delay absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Charlot*, 97 F. Supp. 3d at 61. No claim or evidence of bad faith has been presented.  Further, the six-month delay in requesting to substantively amend the complaint was partially due to Councilmember Vernikov's two extensions to responded to the initial amended complaint.  Accordingly, the request to file a second amended complaint is **GRANTED**.

## CONCLUSION

For the foregoing reasons, the Court concludes that the issues in this case remain live and the case is not moot under the voluntary cessation doctrine. The Court **DENIES** defendant Councilmember Vernikov's motion to dismiss and **GRANTS** Plaintiff's motion for leave to amend her complaint.[10]

**SO ORDERED.**

/s/ Orelia E. Merchant
ORELIA E. MERCHANT
United States District Judge

May 15, 2024
Brooklyn, New York

---

[10] This ruling is "provisional" in nature as "[t]his case comes to [the Court] in a preliminary posture, framed only by uncontested factual allegations and a terse declaration." *See Fikre*, 601 U.S. at 244.  Thus, the Court is "alive" to the possibility that "[a]s the case unfolds. . . .different facts may emerge that may call for a different conclusion." *Id.*

25